NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MICHELLE M., *Appellant*,

*v.*

LOREN C., R.H., *Appellees*.

No. 1 CA-JV 14-0097

FILED 9-16-2014

Appeal from the Superior Court in Maricopa County
No. JS506562
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer, Tanya R. Imming-Hill
*Counsel for Appellant*

Gillespie, Shields & Durrant, Phoenix
By DeeAn Gillespie, Elijah K. Nielson
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

---

**S W A N N**, Judge:

¶1        Michelle M. ("Mother") appeals the superior court's order setting aside the severance of the parent-child relationship between Loren C. ("Father") and their child, R.H. ("Child"). Mother contends that the court erred by setting aside the severance order for lack of subject-matter jurisdiction. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Child was born in February 2005 while Mother and Father were married and resided in California. The parties filed for dissolution shortly after Child's birth, and Mother relocated with Child to Arizona before the dissolution became final. Father at all times continued to reside in California.

¶3        In August 2005, a California court entered a decree of dissolution that incorporated the parties' Marital Settlement Agreement ("MSA") and thereby resolved all outstanding issues related to child custody and parenting time. The MSA mentioned Mother and Child's move to Arizona, but did not make any reference to the California court's relinquishment of jurisdiction over future child-custody issues. Mother never domesticated the California decree in this state.

¶4        After an enduring dispute over parenting time, Father agreed to waive his right to receive notice of the place, date and time of Mother's planned action to sever his parental rights. Father's waiver acknowledged that a court could sever his parental rights in his absence. Mother proceeded to file a severance petition in Arizona in September 2009, which the superior court granted in December 2009.

¶5        In June 2012, Father petitioned the court below to set aside the severance order. Father contended for the first time that the court lacked personal jurisdiction to sever his parental rights because Mother had failed to serve him with the severance petition. Following an evidentiary hearing, the court agreed that Mother had failed to serve Father properly, but found the failure immaterial because of Father's earlier waiver. The court likewise declined to grant relief based on Father's further contention that Mother had testified falsely during the severance hearing.

¶6            Nevertheless, the court ordered the parties to submit additional briefing on the potential impact of *Angel B. v. Vanessa J.*, 234 Ariz. 69, 316 P.3d 1257 (App. 2014), which we published while Father's petition was under advisement and discuss in detail below. Relying on *Angel B.*, the court ordered the December 2009 severance order set aside for lack of subject-matter jurisdiction in April 2014. The court rejected Mother's argument that a California order from June 2013, stating that the California court had "no jurisdiction to modify Arizona orders [because c]ustody proceedings here in California are terminated," proved that Arizona could exercise subject-matter jurisdiction in December 2009. Mother timely appeals.

## DISCUSSION

¶7            Mother contends that the court erred by setting aside the severance order for lack of subject-matter jurisdiction. "We review a trial court's legal conclusions, including questions of jurisdiction, de novo." *Thomas v. Thomas*, 220 Ariz. 290, 292, ¶ 8, 205 P.3d 1137, 1139 (App. 2009).

¶8            The circumstances in *Angel B.* and this case are substantially similar. In *Angel B.*, a married couple had a child while residing in California. 234 Ariz. at 71, ¶ 2, 316 P.3d at 1259. The mother filed for dissolution in California shortly after the child's birth, and the following year a California court issued a dissolution decree that incorporated the parties' parenting plan. *Id.* The mother thereafter moved to Arizona with the child and apparently failed to domesticate the California decree in this state. *Id.* at ¶ 3. The father meanwhile remained a resident of California. *Id.* The mother eventually petitioned an Arizona court to sever Father's parental rights, which the court granted. *Id.* at 71, 74, ¶¶ 3, 16, 316 P.3d at 1259, 1262.

¶9            On appeal in *Angel B.*, we held that the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), codified at A.R.S. §§ 25-1001 to -1067, applies to private severance proceedings under Arizona law. *Id.* at 73, ¶ 14, 316 P.3d at 1261. The UCCJEA provides that once a court with original jurisdiction issues an initial child-custody determination, that court retains exclusive, continuing jurisdiction over all future custody determinations. *Id.* at 72, ¶ 11, 316 P.3d at 1260 (citing A.R.S. § 25-1032(A)). "[O]riginal jurisdiction for the initial child custody determination is based on the child's home state," and "home state" is "the state in which the child lived with a parent for at least six consecutive months before the filing of a custody petition, or since birth." *Id.* at ¶ 9 (citing §§ 25-1002(7), -1031(A)(1)). The initial child-custody determination is "the first child custody determination concerning a particular child." A.R.S. § 25-1002(8). Generally, the UCCJEA prohibits a court of this state from modifying an initial custody order

entered by a court of another state with exclusive, continuing jurisdiction. *Angel B.*, 234 Ariz. at 72, ¶ 11, 316 P.3d at 1260 (citing § 25-1033).

**¶10** Under A.R.S. § 25-1033, however, there are circumstances in which an Arizona court may modify an initial custody determination issued by a court of another state:

> [A] court of this state shall not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under § 25-1031[(A)(1) or (2)] . . . *and* either of the following is true:
>
> 1. The court of the other state determines that it no longer has exclusive, continuing jurisdiction under § 25-1032 *or* that a court of this state would be a more convenient forum under § 25-1037[; *or*]
>
> 2. A court of this state or a court of the other state determines that the child, the child's parents and any person acting as a parent do not presently reside in the other state.

(Emphasis added.) Because neither party in *Angel B.* raised the applicability of these exceptions in the superior court, we remanded for a determination of whether Arizona was the appropriate jurisdiction in which to address severance. *See Angel B.*, 234 Ariz. at 72, 74, ¶¶ 5, 19-21, 316 P.3d at 1260, 1262-63.

**¶11** Unlike *Angel B.*, we need not remand this case for further proceedings because the court below addressed the issue of subject-matter jurisdiction under the UCCJEA and concluded that none of the exceptions in § 25-1033 applied. Neither party disputes that California had original jurisdiction to issue the initial child-custody determination in August 2005. *See* Cal. Fam. Code §§ 3402(c), (g), (h), 3421(a)(1). It is also undisputed that Arizona had become Child's home state by September 2009 when Mother petitioned for severance, thereby satisfying the preliminary requirement of § 25-1033. *See* A.R.S. § 25-1031(A)(1) ("[A] court of this state has jurisdiction to make an initial child-custody determination only if any of the following is true: . . . This state is the home state of the child on the date of the commencement of the proceeding."). But the record is devoid of any indication that California had relinquished its exclusive, continuing jurisdiction, or determined that Arizona would be a more convenient forum, before the Arizona court severed Father's parental rights. Such determinations must be part of the record to satisfy § 25-1033(1). *See Angel B.*, 234 Ariz. at 74, ¶ 17, 316 P.3d at 1262; *Melgar v. Campo*, 215 Ariz. 605, 608, ¶ 15, 161 P.3d 1269, 1272 (App. 2007). And because Father remained a California resident throughout this case, § 25-1033(2) does not apply. We therefore conclude that the

4

court properly set aside the December 2009 severance order for lack of subject-matter jurisdiction.

¶12 Mother nonetheless advances several arguments in favor of reversal. First, she argues that the UCCJEA becomes applicable only when there is an "actual dispute" between two states over which should resolve a child-custody issue, and that there was no such dispute in December 2009 when the Arizona court severed Father's parental rights. On that basis Mother contends that jurisdiction is instead governed by A.R.S. § 8-532(A), which provides that "[t]he juvenile court shall have exclusive original jurisdiction over petitions to terminate the parent-child relationship when the child involved is present in this state." As we concluded in *Angel B.*, however, § 8-532(A) must yield to the UCCJEA to "avoid[ ] what would be a significant constitutional Full Faith and Credit Clause issue." 234 Ariz. at 73, ¶ 14, 316 P.3d at 1261. Nothing in the UCCJEA requires an "actual dispute" between two states to trigger its applicability. *See* A.R.S. §§ 25-1001 to -1067.

¶13 Mother next argues that the June 2013 California order declaring that California no longer had jurisdiction over custody proceedings proves that Arizona properly exercised jurisdiction in December 2009. But that order does not retroactively establish subject-matter jurisdiction in Arizona, and does not affect our decision because, as Mother repeatedly concedes, "California was not consulted on jurisdiction *prior* to the Arizona court entering its December 1, 2009 order terminating Father's parental rights." *See Angel B.*, 234 Ariz. at 74, ¶ 19, 316 P.3d at 1262 (order relinquishing exclusive, continuing jurisdiction issued "*prior* to the issuance of the severance order . . . would allow Arizona to exercise jurisdiction" (emphasis added)); *Melgar*, 215 Ariz. at 605, ¶ 1, 161 P.3d at 1269 ("[UCCJEA] requires that the family court must confer with the judge who issued the out-of-state custody order and/or get the out-of-state court to release its continuing jurisdiction over its custody order *before* modifying an out-of-state order." (emphasis added)).

¶14 Mother further argues that the issue with Arizona's exercise of subject-matter jurisdiction is "purely technical" and that Father has in effect consented to jurisdiction in Arizona. We disagree. "[S]ubject matter jurisdiction cannot be conferred by consent, waiver, or estoppel." *Guminski v. Ariz. State Veterinary Med. Examining Bd.*, 201 Ariz. 180, 184, ¶ 18, 33 P.3d 514, 518 (App. 2001). The onus was on Mother to ask the California court to relinquish its exclusive, continuing jurisdiction before she petitioned for severance in Arizona. *See Melgar*, 215 Ariz. at 607, ¶ 11, 161 P.3d at 1271 ("[Because] the decision to discontinue exclusive, continuing jurisdiction belongs to the court exercising it, . . . a party who wishes to modify the original decree must either return to the court with exclusive,

continuing jurisdiction to modify the order or get that court to relinquish jurisdiction.").

¶15          Mother also argues that the facts of *Angel B.* and this case differ in material ways that compel reversal. She cites the fact that the California court in *Angel B.* modified its initial custody order several times before the mother petitioned for severance in Arizona, 234 Ariz. at 71, ¶ 2, 316 P.3d at 1259, while the California court in this case did not issue any orders between its initial custody determination in August 2005 and its June 2013 order regarding jurisdiction. This distinction makes no difference to our decision because the lynchpin of § 25-1033 is the *initial* child-custody determination –- there is no requirement that additional determinations be made to retain exclusive, continuing jurisdiction. It is also of no significance that here, unlike in *Angel B.*, the California court and Father were aware of Mother's relocation with Child to Arizona. *See id.* at ¶ 3. Though giving notice of relocations may serve to fulfill a policy of "[d]eter[ring] abductions and unilateral removals of children undertaken to obtain custody awards," *Melgar*, 215 Ariz. at 606, ¶ 8, 161 P.3d at 1270, it does not satisfy the jurisdictional requirements of § 25-1033. It is likewise immaterial to our decision that Father waited more than three-and-a-half years to challenge the severance of his parental rights while the father in *Angel B.* immediately appealed the same. *See Angel B.*, 234 Ariz. at 71, ¶ 4, 316 P.3d at 1259. Finality in severance cases is undoubtedly very important, but "[s]ubject matter jurisdiction cannot be waived, and can be raised at any stage of the proceedings." *Swichtenberg v. Brimer*, 171 Ariz. 77, 82, 828 P.2d 1218, 1223 (App. 1991).

¶16          Finally, Mother argues that our holding in *Angel B.* should have only prospective application. "Unless otherwise specified, Arizona appellate opinions in civil cases operate both retroactively and prospectively." *Law v. Superior Court*, 157 Ariz. 147, 160, 755 P.2d 1135, 1148 (1988). We decline to address this argument further because Mother failed to raise it below and has therefore waived it for appellate review. *See Dillig v. Fisher*, 142 Ariz. 47, 51, 688 P.2d 693, 697 (App. 1984) ("[A]ppellants did not raise [an] argument before the trial court and therefore cannot raise it for the first time on appeal.").

CONCLUSION

¶17          For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: MJT